People of State of Illinois ex rel. Glen Morgan et al., Appellees, v. Village of Berkeley et al., Appellants.

Gen. No. 45,155.

Judgment affirmed. Opinion filed November 22, 1950. Released for publication December 28, 1950.

Louis Swidler, of Chicago, for appellants; Ode L. Rankin, of Chicago, of counsel.

McKinley, Price & Appleman, of Chicago, for appellees; William McKinley, Paul E. Price, and Francis C. Sullivan, all of Chicago, of counsel.

Mr. Justice Friend delivered the opinion of the court.

On October 14, 1949, plaintiffs, who were citizens and taxpayers of the Village of Berkeley, Illinois, filed a proceeding in the circuit court of Cook county wherein they sought by writ of mandamus to compel the village and its duly elected officers to negotiate and enter into a contract with the Hillside-Berkeley Water Commission for supplying water to the respective villages of Hillside and Berkeley from a common source. Subsequently, after the original proceeding, which is designated as Count I, had been brought to issue, plaintiffs on January 19, 1950, filed an additional verified complaint called Count II, for a declaratory judgment to determine the rights and legal relations existing between the Water Commission and the respective villages of Hillside and Berkeley, their officers and trustees, arising out of the enactment of ordinances providing for the joint acquisition and operation of a common source of water supply. After the Village of Berkeley had filed its answer to Count II, plaintiffs interposed their motion to strike the answer and to enter a declaratory judgment, which was allowed, and judgment entered. From the declaratory judgment entered February 24, 1950, the Village of Berkeley has taken an appeal. The cause was ordered to stand continued for further proceedings as to Count 1.

Count II alleges in substance that in the year 1948, there was in full force and effect a certain statute of the State of Illinois (Ill. Rev. Stat. 1949, ch. 24, sec. 81–1 [Jones Ill. Stats. Ann. 21.2178]) providing, among other things, as follows: "Any two or more municipalities may acquire either by purchase or construc-

118

tion a waterworks system or a common source of supply of water, or both, and may operate jointly a waterworks system or a common source of supply of water, or both, and improve and extend the same, as provided in this article. The corporate authorities of municipalities desiring to avail themselves of the provisions of this article shall adopt a resolution or ordinance determining and electing to acquire and operate jointly a waterworks system or a common source of supply of water, or both, as the case may be''; that pursuant to the authority conferred by the foregoing statute, the adjoining villages of Hillside and Berkeley passed identical ordinances providing for the joint acquisition and operation of their common source of water supply; and that after the passage of these ordinances each village appointed a commissioner to serve on the water commission which had been created pursuant to the provisions of the statute, and the circuit court of Cook county, in which county both municipalities are located, appointed the third commissioner as provided by statute, thus constituting a commission and public corporation known as the Hillside-Berkeley Water Commission, vested with the powers and duties designated by statute, among which was the power to contract, to be contracted with, and to sue and be sued.

It was alleged in Count II that section 81-5 [Ill. Rev. Stat. 1949, ch. 24, par. 81-5; Jones Ill. Stats. Ann. 21.2182] of the statute contains the following further provision: ''In case the commission has charge of the operation of a common source of supply of water, the municipalities represented by the commission shall contract with the commission for water. These municipalities shall establish such charges and rates for water supplied by them to consumers as will be sufficient at all times (1) to pay the cost of operation and maintenance of the respective waterworks systems of

the municipalities, (2) to provide an adequate depreciation fund therefor, and (3) to pay the charges and rates established by the commission for the sale of water by the commission to those municipalities, and the commission shall establish such charges and rates for water supplied to those municipalities as will be sufficient at all times (1) to pay the cost of operation and maintenance of the common source of supply of water, (2) to provide an adequate depreciation fund therefor, and (3) to pay the principal of and interest on the revenue bonds issued by the commission, under the provisions of this article. Contracts entered into between the commission and the specified municipalities shall include covenants for the establishment of rates and charges as provided in this section''; that notwithstanding the fact that the commission had been vested and had charge of the operation of a common source of water supply for the respective villages, and notwithstanding that the Village of Hillside had entered into a contract with the commission for water subject to the Village of Berkeley's entering into a like or similar contract, the Village of Berkeley has failed, neglected and refused to contract with the commission for water, and has thereby prevented the commission from functioning and discharging the duties prescribed by law pursuant to the provisions of article 81, chapter 24, Illinois Revised Statutes 1949 [Jones Ill. Stats. Ann. 21.2178 *et seq.*].

It is further alleged that plaintiffs demanded that the officers and trustees of the Village of Berkeley contract with the commission, and notwithstanding the fact that the commission had offered to enter into a contract with the Village of Berkeley similar in tenor to that approved by the Village of Hillside, the Village of Berkeley, its officers and trustees have maintained that they are under no duty to enter into any such contract, but on the contrary assert and maintain that

notwithstanding the fact that the Village of Berkeley had joined with the Village of Hillside in creating the commission and in appointing its representative thereon in accordance with the provisions of the statute, it nevertheless is free to disclaim any right, obligation or duty in connection with the further functioning of the commission.

Plaintiffs set forth in Count II their contention that the Village of Berkeley, having joined with the Village of Hillside in the creation of the commission, has a mandatory duty to contract with the commission, and that an actual controversy exists between plaintiffs and the Village of Berkeley, its officers and trustees; and plaintiffs ask that the court enter a declaratory judgment determining the rights and obligations of the parties.

The answer to the second count by the Village of Berkeley, which was stricken on the grounds of insufficiency, alleged that the Village of Berkeley is geographically situated at the westernmost limits of Cook county, and is inhabited by approximately 400 families; that there is only one large industry or business carried on within the village limits, a company engaged in the manufacture and sale of ice; that the water supply of the village is now and for many years last past has been obtained from two limestone wells which are operated and maintained by the village, and that the water therefrom is pumped through a pipe system to the inhabitants of the village who pay therefor according to metered measurement of the water consumed by them; that the ice company in the operation of its business uses approximately one-third of the total amount of water consumed in the village; that the cost of water to the residents is 35 cents per 1000 gallons, and to the ice-manufacturing company, approximately 20 cents per 1000 gallons.

It was averred that, on the east and south, the Village of Hillside is adjacent to the Village of Berkeley, and that there are approximately 500 families residing in Hillside; that there are no businesses which consume large quantities of water in Hillside, comparable to the ice-manufacturing company in Berkeley; that the total amount of water consumed in Hillside per day is approximately the same as the total amount of water consumed by the Village of Berkeley.

It is further averred in defendants' answer that the water commission has proposed obtaining a common source of supply of water by purchasing water pumped from Lake Michigan by the City of Chicago, which city in turn sells such water to the Village of Melrose Park, and that the commission proposes to purchase water from the Village of Melrose Park and to run water lines from said village to the villages of Berkeley and Hillside; that the Village of Melrose Park is adjacent to the City of Chicago; that there is situated between Melrose Park and Berkeley and Hillside, the Village of Bellwood, which is inhabited by over 3000 families, and numerous industries located within said village use large quantities of water; that Bellwood obtains its water from wells, and is confronted with the need for acquiring a greater source of water supply; that Bellwood consumes five times the total amount of water consumed by the villages of Hillside and Berkeley combined; and that it is therefore impractical, unwise and unnecessarily costly for the two comparatively small communities of Berkeley and Hillside to acquire a common source of supply by skirting or crossing the larger Village of Bellwood, whereas to permit the Village of Bellwood to join with them in a three-village water commission would result in a reduction in the cost of acquiring the proposed common source of supply of water to approximately one-third

of the total cost to each village instead of one-half of such cost to the villages of Berkeley and Hillside.

■ ■ In brief, the Village of Berkeley and its officials take the position that they are not obliged to contract unless and until the villages acquire a common source of water supply and place such source in the hands of the commission, and that until such time as the village adopted by ordinance or resolution some definite proposal or plan of the commission for the acquisition of any particular common source of supply, it had the right to withdraw from its undertaking, notwithstanding the fact that it had passed an ordinance approving the creation of a commission, designated one of its citizens as a member thereof, joined in an application to the circuit court for the naming of a third member, and by its action permitted and encouraged the Village of Hillside to enter into a contract with the commission. This contention completely ignores the manifest intent and purpose of the statute. We find no provision therein that the villages concerned are to acquire the water supply before the other provisions of the statute shall become effective. The statute contemplates that only one act of the villages concerned be performed before the provisions of the statute become applicable, namely the adoption of an empowering ordinance or resolution by the villages. Such ordinances were passed by both municipalities. Moreover, the statute itself refutes the condition precedent to the operation of the statute which the Village of Berkeley has attempted to create. It provides (section 81–4) that "for the purpose of acquiring such a . . . common source of supply of water . . . such a commission is authorized to issue revenue bonds payable solely from the revenue to be derived pursuant to any contracts with the specified municipalities or by virtue of the operation of any properties

123

acquired or to be acquired," and that such bonds are to be issued pursuant to an ordinance or resolution of the commission and are not to constitute an indebtedness of any municipalities represented by the commission. Thus, the implication is clear that the commission, rather than either of the municipalities, is authorized to acquire a source of water supply, and is given effective means by which to acquire it. It therefore seems to us that the acquisition of a water supply by the villages could not have been intended as a condition precedent to the operation of the commission, but that immediately upon the passage of the empowering ordinances by the villages, and certainly after the creation of the commission by the designation of its personnel, the commission was effectively created and immediately vested with the rights, powers and duties provided by the statute.

The Village of Berkeley seeks to minimize the effect of the ordinances by designating them as "only a declaration evidencing a policy that, economically speaking, it is wise to cooperate and acquire a common source of water supply," and their counsel say that such declaration of policy cannot be considered as "subject matter for the Water Commission to seize upon, take over, expand, and adopt and for itself, decide that it will dig wells, or buy water from Melrose Park, Wheaton, Bellwood, or Chicago, or from all, lay mains here and there at its discretion, and hand the joint supply to the two villages." However, an examination of the recitals in the ordinances passed by the municipalities clearly shows that it was the intention of the villages that the commission be created for the express and specific purpose of acquiring a particular common supply of water; they stated that it was for the best interest of the respective villages that "a new water main be constructed of sufficient size to provide an adequate water supply for said villages by connect-

ing with the waterworks system of the Village of Melrose Park, Cook County, Illinois, and securing water directly from the City of Chicago, Cook County, Illinois.'' Unless this part of the resolution be entirely disregarded, it would seem idle to argue that, before the commission could function, the municipalities were required to first acquire the common source of water supply.

There can be no doubt that a water commission was here established by two villages with statutory authority to issue revenue bonds for the purpose of acquiring a water supply. Although the commission did not see fit to issue revenue bonds prior to the institution of this suit, it had the statutory right to do so, and if upon its creation it had issued such bonds they would be worthless if the theory of the Village of Berkeley is to be adopted, because the bonds are to be paid off in funds accruing as a result of sales of water to the municipalities and from funds acquired from the operation of the source of water supply; and with one municipality refusing to contract for water, it is difficult to perceive how the bonds could be retired. Bonds issued by the commission are, by the terms of the statute, not a debt of the member municipalities, and it is reasonable to assume that the legislature, in order to prevent such a situation as we have before us, intended that the member municipalities contract for water as they had evidently contemplated doing when they passed the resolution and helped to create the commission, and thus provide a source for the payment of such bonds. In that situation the court ought not to hold that the Village of Berkeley is at liberty to withdraw from membership in the commission at any time before the common source of water supply has been established. The Village of Hillside, after passing an identical ordinance, entered into a contract with the water commission, and to now permit the Village

125

of Berkeley to reconsider its action and withdraw from the commission would saddle the Village of Hillside with an obligation which it had never intended to assume alone.

The order for a declaratory judgment from which the Village of Berkeley appeals found that pursuant to the statute the respective villages joined in the establishment of the water commission in the manner provided by statute, and the court declared that the commission thereupon became, was and is a public corporation; that both of the municipalities, after bringing the commission into existence pursuant to statute, were required to contract with the commission for the supplying of water to the inhabitants of the respective villages; that all of the essential terms of the contract between the commission and the municipalities are outlined in the statute; that accordingly it became the duty of the Village of Berkeley to contract with the water commission pursuant to the terms of the statute; and that since it appears that the rights of other parties have accrued in view of the action of the Village of Hillside in joining in the creation of the commission, the Village of Berkeley has no right, power or authority to withdraw from the commission and thereby adversely affect the rights of such parties.

■■■ The question presented appears to be one of first impression, and no pertinent authorities are cited by either of the counsel. However, from an examination of the statute and in the light of the admitted facts and circumstances, we think the court properly entered the declaratory judgment, and it is therefore affirmed.

*Judgment affirmed.*

SCHWARTZ, P. J., and SCANLAN, J., concur.